UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE REFUGIO GONZALEZ QUIROZ individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COFFMAN SPECIALTIES, INC.,<br><br>Defendant. | Case No.: 20-CV-1779-CAB-AHG<br><br>**ORDER REMANDING CASE**<br><br>[Doc. No. 16] |

Defendant Coffman Specialties, Inc. ("CSI") removed this putative wage and hour class action from San Diego County Superior Court asserting subject matter jurisdiction under 28 U.S.C. § 1331 on the grounds that Plaintiff's complaint includes claims that are completely preempted by federal law under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. [Doc. No. 1.]  A week later, CSI moved to dismiss the operative first amended complaint ("FAC") arguing that Plaintiff is required to resolve his claims in accordance with a grievance and arbitration procedure contained in a collective bargaining agreement under which Plaintiff was employed by CSI.  [Doc. No. 16.]  In opposition to the motion, Plaintiff argues in part that the removal was improper because Plaintiff's claims are not preempted under section 301 of the LMRA, and that the Court must remand the case to state court.  Upon consideration of the FAC, the notice of removal, and the jurisdictional arguments contained in the briefing on Defendant's motion to dismiss, the Court agrees with Plaintiff that Plaintiff's claims are were not subject to removal pursuant to § 301.  Accordingly, as discussed further below, this case is remanded to San Diego County Superior Court.

1

## I. Background

Plaintiff Jose Refugio Gonzalez Quiroz is a non-exempt employee of CSI, which is a California corporation involved in the construction business and specializing in large public and government projects. [Doc. No. 1-3 at ¶¶ 8-9.] On July 1, 2020, Plaintiff filed a complaint in San Diego County Superior Court asserting six wage and hour claims under the California labor code and a claim for violation of California's unfair competition law ("UCL"), California Business and Professions Code § 17200, on behalf of a putative class consisting of all current and former non-exempt California CSI employees within four years of filing of the complaint. [Doc. No. 1-2.] The six claims under the California labor code were: (1) failure to pay overtime and minimum wages in violation of sections 204, 510, 1194, 1194.2, 1197, and 1198; (2) failure to provide meal breaks in violation of sections 226.7 and 512; (3) failure to provide rest periods in violation of section 226.7; (4) failure to provide accurate wage statements in violation of section 226; (5) waiting time penalties for failure to comply with final paycheck requirements in violation of sections 201, 202, and 203; and (6) failure to reimburse business expenses in violation of sections 2800 and 2802. On August 31, 2020, Plaintiff filed a first amended complaint ("FAC") in state court asserting the same seven claims as in the original complaint along with an additional claim for violation of California's Private Attorney General Act ("PAGA"), California Labor Code § 2698 *et seq*. Neither complaint makes any mention of a collective bargaining agreement or of any other contract governing Plaintiff's employment relationship with CSI.

On September 10, 2020, CSI removed the lawsuit to this Court, asserting subject matter jurisdiction based on a federal question under 28 U.S.C. § 1331 because the FAC includes "claims that require interpretation of a collective bargaining agreement ('CBA') and thus is completely preempted by federal law under Section 301 of the Labor Management Relations Act ('LMRA'), 29 U.S.C. § 185." [Doc. No. 1 at ¶ 11.] The notice of removal alleges that CSI is a member of the Associated General Contractors of America San Diego Chapter, Inc. ("AGC"), and that "[s]ince at least 2007, [CSI] has assigned its

collective bargaining rights to the AGC and thereby agreed to be bound by the terms and conditions in a CBA known as the Master Labor Agreement ('MLA') between the International Union of Operating Engineers, Local 12 (the 'Union') and the AGC." [*Id.* at ¶ 14.] The notice of removal also attaches the current MLA, which covers the period of July 1, 2019 through June 30, 2022. [Doc. No. 1-5; *see also* Doc. No. 16-2.] The notice of removal contends that because of the complete preemption doctrine, the fact that the FAC does not reference the MLA does not preclude removal. [*Id.* at ¶¶ 19-21.] Plaintiff argues that removal was improper, and the Court must remand this case.

## II. Legal Standards

Although Plaintiff did not file a formal motion to remand, he argued for remand in his opposition to CSI's motion to dismiss, and CSI had the opportunity to respond in its reply. Regardless, "[t]he court may—indeed must—remand an action *sua sponte* if it determines that it lacks subject matter jurisdiction." *GFD, LLC v. Carter*, No. CV 12-08985 MMM FFMX, 2012 WL 5830079, at *2 (C.D. Cal. Nov. 15, 2012) (citing *Kelton Arms Condominium Owners Ass'n v. Homestead Ins. Co.*, 346 F.3d 1190, 1192 (9th Cir. 2003)); *see also* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Thus, it is "presume[d] that federal courts lack jurisdiction unless the contrary appears affirmatively from the record." *Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1056 (9th Cir. 2018) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006)). "The right of removal is entirely a creature of statute and a suit commenced in a state court must remain there until cause is shown for its transfer under some act of Congress." *Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 32 (2002) (internal quotation marks and citation omitted). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citation omitted). Courts

must "strictly construe the removal statute against removal jurisdiction," and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.* "Where doubt regarding the right to removal exists, a case should be remanded to state court." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).

### III. Discussion

CSI contends that this Court has subject matter jurisdiction under section 301 of the LMRA, which states:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185. "By its terms, this provision confers federal subject-matter jurisdiction only over '[s]uits for violation of contracts.'" *Textron Lycoming Reciprocating Engine Div., Avco Corp. v. United Auto., Aerospace, Agric. Implement Workers of Am., Int'l Union*, 523 U.S. 653, 656 (1998) (hereinafter, "*Textron*"). A suit for violation of a contract is "one filed *because a contract has been violated*. . . ." *Id.* at 657 (*emphasis* in original). The "preemptive force of section 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 23 (1983).

"[I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is pre-empted and federal labor-law principles-necessarily uniform throughout the Nation-must be employed to resolve the dispute." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405–06, (1988). However, "§ 301 pre-emption merely ensures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing about the substantive

rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements." *Id.* at 409.

Section 301 therefore "cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law. . . ." *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994). Rather, "Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'" *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987). "[I]t is the legal character of a claim, as 'independent' of rights under the collective-bargaining agreement that decides whether a state cause of action may go forward." *Lividas*, 512 U.S. at 123-24 (internal citations omitted). "The plaintiff's claim is the touchstone for this analysis; the need to interpret the CBA must inhere in the nature of the plaintiff's claim. If the claim is plainly based on state law, § 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense." *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001) (citing *Caterpillar*, 482 U.S. at 398–99).

In sum, "a plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights *independent* of that agreement," *Caterpillar*, 482 U.S. at 396 (*emphasis* in original), and "[t]he fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted under the NLRA does not establish that they are removable to federal court." *Id.* at 398. "When a plaintiff invokes a right created by a collective-bargaining agreement, the plaintiff has *chosen* to plead what . . . must be regarded as a federal claim, and removal is at the defendant's option. But a *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated." *Id.* at 399 (*emphasis* in original).

The Ninth Circuit has identified two guidelines from the Supreme Court to aid in the determination of "the line of 'demarcation between preempted claims and those that survive [section] 301's reach.'" *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1060 (9th

Cir. 2007) (quoting *Cramer*, 255 F.3d at 691). "First, to determine whether a particular right inheres in state law or, instead, is grounded in a CBA, the Court has instructed us to consider 'the *legal* character of a claim, as "independent" of rights under the collective-bargaining agreement [and] not whether a grievance arising from "precisely the same set of facts" could be pursued.'" *Id.* (*emphasis* in original) (quoting *Livadas*, 512 U.S. at 123). "The essential inquiry is this: Does the claim seek purely to vindicate a right or duty created by the CBA itself? If so, then the claim is preempted, and the analysis ends there." *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152–53 (9th Cir. 2019) (internal quotation marks, brackets and citation omitted). Second, if the right asserted is based on state law, and not the CBA, the court must "determine whether a state law right is 'substantially dependent' on the terms of a CBA, [and] decide whether the claim can be resolved by 'looking to' versus interpreting the CBA. If the latter, the claim is preempted; if the former, it is not." *Burnside*, 491 F.3d at 1060 (internal citations omitted).

Here, the FAC does not mention the MLA, or any other CBA or contract whatsoever. The only rights the FAC claims were violated are those created by California statutes. Thus, "[t]his suit obviously does not have as its 'purpose or object' violation of any contract." *Textron*, 523 U.S. at 657. To the contrary, Plaintiff solely seeks to enforce rights that Plaintiff claims he and the putative class have under the California labor code. The legal character of the claims in the FAC are all for violation of state law rights independent of any rights under the MLA. Further, the FAC does not "artfully plead" around alleging a claim for breach of the MLA. To that end, CSI is not arguing that the FAC states a claim for violation of the MLA without actually labeling it as a breach of contract claim; rather, CSI argues, based on evidence outside of the complaint (namely, the MLA itself), that California state laws under which Plaintiff seeks relief do not apply to him because of the MLA. *See Caterpillar*, 482 U.S. at 397 ("In sum, Caterpillar does not seek to point out that the contract relied upon by respondents is in fact a collective agreement; rather it attempts to justify removal on the basis of facts not alleged in the complaint. The 'artful pleading' doctrine cannot be invoked in such circumstances."). Because the rights asserted

in the FAC inhere in state law, the first *Burnside* factor does not support removal under § 301.

The second *Burnside* factor also does not establish application of § 301 to support removal. The FAC alleges only that CSI violated California labor laws with respect to the payment of overtime, the provision of meal and rest periods, the provision of accurate wage statements, payment of wages upon discharge, and reimbursement of expenses. It does not allege that the terms of the MLA violate state law or raise any dispute as to the interpretation of the MLA. Thus, resolution of these claims does not require interpreting the MLA, meaning the second *Burnside* factor is not satisfied either.

CSI argues that *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146 (9th Cir. 2019), requires a finding that this Court has subject matter jurisdiction based on the existence of the MLA. In *Curtis*, however, the "plaintiff claimed that he was being deprived under the arrangement laid out in the applicable CBA of rights to which he contended [California Labor Code] Section 510 entitles him to receive." *Ross v. Stater Bros Markets*, No. 5:19-CV-00755-SJO (KKx), 2019 WL 6332241, at *4 (C.D. Cal. Aug. 8, 2019). Here, in contrast, Plaintiff does not allege that the terms of the MLA violate state law; he simply alleges that CSI has violated rights he has under the California labor code.

In other words, Plaintiff does not allege that he was paid in compliance with the MLA provisions but that the MLA provisions violated California law. Nor does he allege that CSI did not pay him in compliance with the MLA and that therefore CSI violated the MLA. *See, e.g., Textron*, 523 U.S. at 657 ("'Suits for violation of contracts'" under § 301(a) are . . . suits that claim a contract has been violated."). Nor is there any indication that any of the terms of the MLA are in dispute. Instead, the FAC simply alleges that CSI did not comply with various sections of California labor law. CSI's defense to these claims is that the California labor laws that form the basis of some or all of Plaintiff's claims do not apply to Plaintiff or the putative class because of the MLA. If CSI is correct, Plaintiff's asserted claims will fail. That Plaintiff does not have rights under the state statutes that form the basis of the claims in his complaint, however, does not somehow convert those

claims into claims for violation of the MLA or make them substantially dependent on the MLA such that they are removable under § 301.  This is true even if the defendant argues, as CSI does here, that the plaintiff has waived or negotiated away his state law rights based on the terms of a CBA.  *See Caterpillar*, 482 U.S. at 399 (noting that "when a defense to a state claim is based on the terms of a collective-bargaining agreement, *the state court* will have to interpret that agreement to decide whether the state claim survives," but that the complaint is not removable) (*emphasis* added); *see also Ross*, 2019 WL 6332241, at *4 (denying motion for reconsideration of remand order based on intervening decision in *Curtis*).[1]

Ultimately, Plaintiff may also have (or only have) rights under the MLA.  If Plaintiff had filed a lawsuit seeking to enforce such rights, that lawsuit likely would be removable to federal court under § 301.  *See Caterpillar*, 482 U.S. at 394–95 ("It is true that respondents, bargaining unit members at the time of the plant closing, possessed substantial rights under the collective agreement, and could have brought suit under § 301. As masters of the complaint, however, they chose not to do so.").  That is not the lawsuit before the Court.  This lawsuit asserts only claims for violations of state statutes.  These claims may address the same facts as any claims Plaintiff may have under the MLA, but the claims themselves do not require interpreting the MLA.  *See Lingle*, 486 U.S. at 409–10 ("[E]ven if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes.").

---

[1] *Curtis* is also distinguishable because although the Ninth Circuit concluded that the plaintiff's claim was preempted under § 301, it did so in the context of a motion to dismiss and did not expressly consider or hold that the existence of such preemption made removal proper.  In *Caterpillar*, however, the Supreme Court held that "[t]he fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted under the NLRA does not establish that they are removable to federal court." *Caterpillar*, 482 U.S. at 398.

Nor does the existence of the arbitration provision in the MLA implicate § 301.  "[A] court may look to the CBA to determine whether it contains a clear and unmistakable waiver of state law rights without triggering [section] 301 preemption."  *Burnside*, 491 F.3d at 1060 (quoting *Cramer*, 255 F.3d at 691); *see also Caterpillar*, 482 U.S. at 398 n.13 (noting that evaluation of whether the plaintiffs had waived any rights pursuant to a CBA was, along with any other pre-emption arguments raised by the defendant, a "question[] that must be addressed in the first instance by the state court in which respondents filed their claims").  Thus, a court may have to determine whether, based on the MLA, Plaintiff's union bargained away his rights to pursue in court any of the state law violations alleged in the FAC, but that does not make removal proper.  *Cf. Vasserman v. Henry Mayo Newhall Mem'l Hosp.*, 65 F. Supp. 3d 932, 965 (C.D. Cal. 2014) ("Numerous courts have held that a defendant's argument that a plaintiff has waived her right to pursue state law claims due to a grievance and arbitration provision in a CBA constitutes a 'defense' that does not give rise to preemption under the LMRA or create a federal question.").[2]

### IV. Conclusion

The FAC does not assert any claims based on rights under the MLA or that require interpretation of the MLA.  CSI's reliance on the MLA for its defense to Plaintiff's claims does not make removal under § 301 proper.  Accordingly, this case is **REMANDED** to San Diego County Superior Court.

It is **SO ORDERED**.

Dated: December 10, 2020

Hon. Cathy Ann Bencivengo
United States District Judge

---

[2] Notably, in support of its argument that the MLA's arbitration provision applies to Plaintiff's claims, CSI cites to the California state appellate court opinion from this same *Vasserman* case after it was remanded for not being removable under § 301.  *See* Docket No. 16-1 at 14, 16 (citing *Vasserman v. Henry Mayo Newhall Mem'l Hosp.*, 8 Cal. App. 5th 236 (Cal. Ct. App. 2017)).